No. 21172.

JAMES B. FLADUNG, PAUL A. FLADUNG, AND CECILIA PAULA GREEN *v.* CLEMENT H. FLADUNG, PETER FLADUNG, AGNES FLADUNG SVITEK, AND THE FEDERAL LAND BANK OF WICHITA, KANSAS.

(426 P.2d 543)

Decided April 17, 1967.     Rehearing denied May 8, 1967.

COLEMAN & KAMPS, JERRY E. QUICK, for plaintiffs in error.

RYAN, SAYRE, MARTIN and BROTZMAN, for defendants in error Clement H. Fladung, Peter Fladung and Agnes Fladung Svitek.

DONALD J. ROBINSON, EDW. H. JAMISON, W. FRANK RAGLAND, WM. G. PLESTED, JR., CONRAD L. BALL, for defendant in error The Federal Land Bank of Wichita, Kansas, a corporation.

*In Department.*

Opinion by MR. CHIEF JUSTICE MOORE.

THE parties will be referred to as they appeared in the trial court where plaintiffs in error were plaintiffs and defendants in error were defendants.

The individual plaintiffs and defendants are all members of the same family being the children of Agatha Fladung and Anton Fladung. Agatha Fladung, the mother of the nine children involved in this litigation, executed a trust instrument on May 7, 1946. One other child took no part in the controversy. By this document she conveyed to the individual defendants above named as trustees the real estate known as the "Fladung farm" consisting of 160 acres of irrigated land in Boulder county, together with the water rights appurtenant

thereto and all improvements erected thereon. Generally, the instrument provided for the operation of the farm by the trustees until the death of the father of the children, and upon that event the trustees were directed to sell all the trust estate then remaining in their hands and (after certain expenditures not material to this controversy) to divide and pay the money derived from the sale of trust assets in equal shares to the ten named children of the settlor or their respective blood descendants, per stirpes.

Agatha, the settlor, died July 30, 1947, and the defendant Clement H. Fladung operated the farm until the death of the father on April 12, 1961. During a portion of that time his brother Peter worked the farm with him, as a partner. In the trust instrument there appears the following pertinent language:

"In connection with the sale of the Trust Estate as hereinabove provided, the Grantor does hereby give and grant unto said CLEMENT H. FLADUNG the first and prior right to buy and purchase the Trust Estate for such amount as shall be agreed upon by said Trustees as the then reasonable market value of the Trust estate."

The trustees, after obtaining an opinion from a qualified expert concerning the reasonable market value of the trust estate, executed a deed to Clement H. Fladung for which he paid $38,000. This was the value set by the appraiser. There was nothing in the trust indenture which required that an independent appraisal be made before a sale could be consummated. The provision was that Clement could buy for "such amount as shall be agreed upon by said Trustees as the then reasonable market value of the Trust Estate." All three trustees executed the deed knowing full well what the purchase price was, and each of them was entitled to receive a one-tenth share in the purchase price remaining after certain expenditures were made. After consummation of the sale to Clement (and his wife who shortly thereafter died) he negotiated a loan from the defendant bank

which is the reason it is made a defendant in this action. After the purchase by Clement, six of the children of Agatha brought this action in the district court. They alleged that the trustees were guilty of breaches of trust in the administration of the estate entrusted to them, by reason of which they sought damages and an accounting. They also sought to set aside the sale to Clement on the ground that he paid an inadequate price for the estate, and as a trustee for his brothers and sisters he should not be permitted to profit at their expense.

There was sharp conflict in the evidence relating to the value of the property. Witnesses for the defendants expressed opinions fixing the reasonable value of the farm at sums as low as $35,000 and as high as $40,000. Witnesses for the plaintiffs gave a valuation of $75,000 and $80,000 and in so doing considered the "prospective future use of the trust estate" as a rural residential area. Other witnesses for the plaintiffs gave a valuation of $60,000 and $65,000.

■ The trial court made extensive findings of fact from which we quote, *inter alia*, the following:

"In 1946 the mother, evidently thinking that her days were not many, prepared what is titled an indenture and trust agreement whereby she appointed her daughter Agnes, her son Peter, and her son Clem to be trustees with general powers and specifically provided that these general powers enumerated were not made as limitations. In other words, she intended to and did give carte blanch to her trustees to handle this estate property, which was the home place. * * *"

\* \* \*

"* * * On page 4 [of the trust instrument] when the place was to come up for sale she specified it shall be sold, not may be — the grantor, she did this herself, does hereby give and grant unto Clement H. Fladung the first and prior right to buy and purchase the trust estate for such amount as should be agreed upon by

said trustees as the then-reasonable market value of the trust estate; in other words, the then-reasonable market value as the trustees shall determine. I don't know how much greater latitude she could have given any trustee.

\* \* \*

"Now we come to the part complained of, the sale of this property. The Court finds that these trustees did exactly what they were empowered to do and directed to do by this Trust Agreement; but they went farther. They did what anyone any better acquainted with business matters or sale or resale would do, they asked a reputable appraiser to appraise this property. And he did, brought back the appraisal, has been here and justified it and told why.

"Now, the Court canvasses the testimony of experts the same as any other witness. I have done that in this case. And always when there are experts on the value of property there is a great variance in their opinion as to value, and the Court may take that into consideration. The Court must look at this whole proposition as an overall matter and consider the inferences that may be legitimately drawn or that evolve from the evidence in this case; and from that the Court finds and concludes as a matter of law that the trustees, nor any one or more of them did not violate their fiduciary responsibilities or duties, that they strictly abided by the authority with which they were empowered, by this Trust Agreement, that they not only acted honestly, the Court believes and concludes that at least Clem, he was the most active one, I mean, he was the recipient, he was the buyer — I think to take his actions as a whole, he is the one that asked for the appraiser. He could have bought the place from those other two without either connivance or the appraiser; but he didn't. And I think his actions throughout have not only been marked with honesty, with industry, with stalwart evidence of character, but I think with integrity. \* \* \*

386

"So the Court concludes as a matter of law that using the yardstick that the burden is upon a trustee or trustees in such a case to show that they acted with honesty toward their wards or beneficiaries, that in this case the defendant trustees have sustained that burden and have established the facts as I have just stated."

An examination of the evidence presented at the trial discloses ample support for the above findings. The court entered judgment for the defendants.

The thrust of the argument of counsel for plaintiffs is that the trial court, as a matter of law, should have determined that the trustees failed to administer the trust estate in the interest of the beneficiaries. It is argued that:

"Where the trustee has a conflict of personal interest in the trust estate and when he acts in his own interests in connection with the performance of his duties as trustee, the standard of behavior is rigorous and his interest must yield to that of the beneficiaries. In such case, the transaction may not stand unless trustee makes full disclosure, takes no advantage of his position and the transaction is in all respects fair and reasonable."

As shown by the above quotations from the trial court's findings the rule contended for by plaintiffs was given full consideration, and applying that rule to the facts in this case the court found no breach of trust. The trial court did not commit error in this connection. Other minor points relating to the admission and exclusion of evidence are without merit.

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE HODGES concur.